UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRISCOLL MISSION BAY, LLC, dba DRISCOLL MISSION BAY, a California Limited Liability Company,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>M/Y NEW HORIZON, U.S.C.G. Official No. 1102966, a 37.5-Foot Carver Motor Yacht, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS AND APPURTENANCES, in rem,<br><br>　　　　　　　　　　Defendant. | Case No.: 3:24-cv-1396-JES-SBC<br><br>IN ADMIRALTY<br><br>**ORDER DIRECTING VESSEL SALE AND AUTHORIZING CREDIT BID**<br><br>[ECF No. 15] |

**ORDER DIRECTING VESSEL SALE AND AUTHORIZING CREDIT BID**

　　Pending before the Court is Plaintiff DRISCOLL MISSION BAY, LLC's Motion for Interlocutory Vessel Sale and Authorization to Credit Bid ("Motion for Vessel Sale"). For the reasons stated below, the Court **GRANTS** the unopposed Motion and **VACATES** the hearing set for January 15, 2025.

/ / /

/ / /

# I. BACKGROUND

## A. Factual Background

On February 13, 2018, Michael J. Rauch executed a Maritime Contract for Private Wharfage (the "Wharfage Contract"). Verified Complaint ("VC") at ¶ 5. On February 23, 2018, a representative of Plaintiff also executed the Wharfage Contract, pursuant to which Michael J. Rauch berthed the Defendant Vessel in a slip at Plaintiff's marina. *Id*.

Pursuant to Paragraph 6 of the Wharfage Contract, the charges and fees specified therein were due and payable each month on the first day. VC at ¶ 6.

Plaintiff received a payment due under the Wharfage Contract on or about July 5, 2023. All payments thereafter ceased, and the account for the Defendant Vessel fell progressively into arrears. No part of such arrearages has been paid to date. VC at ¶ 7.

Plaintiff is informed and believes that Michael J. Rauch passed away. VC at ¶ 8. On October 16, 2023, Austin Rauch, who Plaintiff understands is Michael J. Rauch's son, advised Plaintiff's Marina Manager in an email that: "I wanted to let you know we [Austin Rauch and his brother Patrick Rauch] are comfortable letting the boat go through the lean [sic] process," and he thanked the Marina Manager "for your help navigating through this process [and] everything you have done for us thus far." *Id*.

On March 15, 2024, in a final attempt to avoid bringing this vessel arrest action, Plaintiff's attorney sent the Estate of Michael J. Rauch a letter advising that due to a failure to pay wharfage fees the Defendant Vessel was subject to arrest pursuant to the Commercial Instruments and Maritime Liens Act and Supplemental Admiralty Rules C and E, and offering an opportunity to pay the arrearages and take possession of the Defendant Vessel. VC at ¶ 9. Austin Rauch subsequently called Plaintiff's attorney and reiterated that the Estate was not interested in paying the arrearages and taking possession of the Defendant Vessel. *Id*. The above-described letter was also sent to Ms. Audra Rivera, who Plaintiff understands was a friend of Michael J. Rauch, and who might claim an interest in the Defendant Vessel. *Id*. She did not respond to counsel's letter. *Id*.

1  Wharfage fees that are due pursuant to the Wharfage Contract and which remained unpaid, calculated through August 4, 2024, total a sum of not less than $58,761.50. VC at ¶ 10.

Plaintiff avers in its Verified Complaint that it provided wharfage services in a workmanlike manner, consistent with the requirements of the Wharfage Contract and the prevailing industry standards in San Diego, and it has otherwise fully satisfied all contractual obligations required of it as a maritime services provider. VC at ¶ 11.

Notwithstanding Plaintiff's demands for payment of monies due and owing for services provided for the benefit of the Defendant Vessel, the Defendant Vessel and her owner failed to bring the account current and satisfy Plaintiff's maritime "necessaries" lien. VC at ¶ 12.

The statutory maritime law confers a maritime lien in favor of those who provide necessaries for the benefit of a vessel. *See*, 46 U.S.C. § 31342(a), which provides that, apart from public vessels, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner - (1) has a maritime lien on the vessel; and (2) may bring a civil action in rem to enforce the lien." Pursuant to the General Maritime Law of the United States the provision of vessel wharfage services gives rise to a maritime lien against the vessel to which such services are provided. *See*, e.g., *Ex Parte Easton*, 95 U.S. 68, 75-77 (1877) ("contract for wharfage is a maritime contract [and a] maritime lien arises against the ship or vessel in favor of the proprietor of the wharf"). Thus, a maritime necessaries lien subsists and encumbers the Defendant Vessel in favor of Plaintiff in an amount of not less than the sum specified in the Verified Complaint, no part of which has been paid by the Defendant Vessel or her owner. VC at ¶ 14.

Plaintiff alleges that as a result of the foregoing, it has been damaged in an amount of not less than $58,761.50, plus interest and the costs of suit. VC at ¶ 15.

B.  **Procedural Background**

On August 6, 2024, Plaintiff filed its Verified Complaint against the Defendant Vessel and all of her engines, tackle, accessories, equipment, furnishings, dinghies and

appurtenances, in rem for vessel arrest, interlocutory sale, and money damages for breach of maritime contract, trespass, and quantum meruit. ECF No. 1. On August 13, 2024, this Court issued Orders authorizing the arrest of the Defendant Vessel and appointing Plaintiff as Substitute Custodian. ECF Nos. 6, 7. The default of Defendant Vessel was entered on November 29, 2024. ECF No. 14. Plaintiff filed the instant Motion for Interlocutory Vessel Sale and Authorization to Credit Bid on December 16, 2024. ECF No. 15.

## II.   DISCUSSION

### A.   Interlocutory Sale

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the in rem process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). The Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims provide that upon application of a party having custody of the subject property, the Court may order the property sold if the property is "liable to deterioration" while in custody pending the action, "there is an unreasonable delay in securing the release of the property," or if "the expense of keeping the property is excessive or disproportionate." Fed. R. Civ. P. Supp. R. E(9)(a).1. The applicant is required to satisfy only one of the three listed criteria to justify an interlocutory sale. *California Yacht Marina-Chula Vista, LLC v. S/V OPILY*, No. 14-cv-01215-BAS(BGS), 2015 WL 1197540, at *2 (S.D. Cal. Mar. 16, 2015) (citing *Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981)). Plaintiff moves for interlocutory sale on all three grounds. *See* Motion for Vessel sale at 6-13.

Plaintiff first argues that as the Defendant Vessel's machinery, equipment and general condition deteriorate while in custody, her value is commensurately decreasing. Motion for Vessel sale at 7. To support this contention, Plaintiff submits a Declaration from Ray Jones ("Jones Decl."), a licensed yacht broker of 42 years who has sold thousands of vessels and offered expert opinion in dozens of cases involving arrested vessels. Jones Decl. at ¶ 2. Jones stated that "vessels inevitably deteriorate in condition and value over

time," especially when, as in this case, the vessel sits idle for extended periods in salt water. *Id.* at ¶ 4. Based upon Jones's testimony, the Court finds that the Defendant Vessel is liable to deterioration within the meaning of Rule E(9)(a) while in custody pending this action. *See Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 987-88 (S.D. Cal. 2020) (relying on Jones's testimony to conclude that a vessel sitting idle in salt water is liable to deterioration); *California Yacht Marina-Chula Vista, LLC*, 2015 WL 1197540, at *3 (same); *Shelter Cove Marina, Ltd. v. M/Y Isabella*, Case No. 17-cv-1578-GPC-BLM, 2017 WL 5906673, at *2 (S.D. Cal. Nov. 30, 2017) (same).

Next, Plaintiff argues that since the Defendant Vessel's arrest there has been no effort to secure its release which has resulted in an unreasonable delay. Motion for Vessel Sale at p. 9. "Courts generally allow at least four months for the provision of a bond to secure the release of a vessel before granting an interlocutory sale on grounds of unreasonable delay." *GB Cap. Holdings, LLC v. S/V Glori B,* No. 18cv312-WQH-AGS, 2019 WL 277387, at *4 (S.D. Cal. Jan. 22, 2019) (citing *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Off. No. 1130283*, No. 08CV2044 BTM (WMC), 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009)), *aff'd sub nom*. *GB Cap. Holdings, LLC v. Heston*, 802 F. App'x 304 (9th Cir. 2020).

The Defendant Vessel was arrested on September 4, 2024. ECF No. 7. Calculated from the arrest date through January 15, 2025, the hearing date for Plaintiff's Motion for Interlocutory Vessel Sale, the Defendant Vessel has been under arrest for 133 days – a period of approximately 4.4 months. The record does not show any attempt to secure the Defendant Vessel's release. Thus, the Court finds that there has been an unreasonable delay within the meaning of Rule E(9)(a). *See Ferrous Fin. Servs. Co.*, 567 F. Supp. at 401 (finding no attempt to secure vessel's release within four months of arrest was unreasonable delay); and *Vineyard Bank*, 2009 W.L. 799304 at *2 (finding unreasonable delay because "[m]ore than four months ha[d] passed since the Defendant Vessel's arrest.")

Finally, Plaintiff argues that the cost of keeping the Defendant Vessel in custody is excessive and disproportionate. Motion for Vessel Sale at 10. Plaintiff presents evidence

that while the Defendant Vessel is in custody Substitute Custodian fees will continue to accrue in an amount not less than $187.50 per day for wharfage and general custodial services, plus $50.00 per week for inspections of the interior of the Defendant Vessel, and that Substitute Custodian fees now total at least $25,887.50. *Id.* at 11.

Plaintiff also presents evidence that the fair market value of the Defendant Vessel is approximately $20,000.00. *Id.* at 11. Thus, Substitute Custodian fees now exceed the fair market value of the Defendant Vessel. "Maintenance expenses of several thousand dollars per month, particularly where [no attempt has been made] to answer Plaintiff's Complaint or secure the Vessel's release, are excessive and disproportionate." *Vineyard Bank*, 2009 WL 799304, at *2. Accordingly, the Court finds that the cost of keeping the Defendant Vessel in custody is excessive and disproportionate under Rule E(9)(a). *See GB Cap. Holdings, LLC*, 2019 WL 277387, at *4 (holding accrued costs of $2,430.00 per month excessive and disproportionate to vessel's $6,000.00 fair market value).

In the light of the Defendant Vessel's likelihood of deterioration, the unreasonable delay in securing her release, and the excessive and disproportionate cost of keeping her in custody, the Court finds interlocutory sale warranted under Rule E(9)(a) and grants Plaintiff's motion in this regard.

### B. Authorization to Credit Bid

Plaintiff asks the Court to authorize a credit bid at the Defendant Vessel's auction up to the lien amount in the Verified Complaint ($58,761.50) to be established by affidavit, plus its actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian, and other *custodia legis* expenses to be calculated through the date of sale. Motion for Vessel Sale at 14. Plaintiff asserts that as the only maritime lien claimant, it is by definition senior to all other claims in this action. *Id.*

Under the Civil Local Rules, when the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified

check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale. Civ. L.R. E.1(e)(2). There is nothing in the record to indicate that a party aside from Plaintiff has asserted any maritime lien claim against the Defendant Vessel. It follows that Plaintiff has a valid claim senior in priority to all other parties and thus the Court finds it appropriate to grant Plaintiff's request to credit bid at the Defendant Vessel's auction.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff's motion for interlocutory sale and credit authorization as follows:

**IT IS HEREBY ORDERED** that, consistent with Rule E(9)(b) and Civil Local Rule E.1(e) the United States Marshal be and hereby is directed and empowered to sell said Defendant Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale; and

**IT IS FURTHER ORDERED** that, such public notice specify the date, time and location for the sale of the Defendant Vessel; and

**IT IS FURTHER ORDERED** that, consistent with Civil Local Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

**IT IS FURTHER ORDERED** that any proceeds of said sale shall be held by the United States Marshal or deposited by the United States Marshal in the Registry of this Court, pending further order of this Court; and

**IT IS FURTHER ORDERED** that Plaintiff, having a secured maritime lien interest in the Defendant Vessel pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. §§ 31301-31343) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Civil Local Rule E.1(e)(2) to credit bid at the auction of the Defendant Vessel, without payment of cash, a sum equal to its secured interest in the Defendant Vessel, consisting of the lien amount specified in Plaintiff's Verified Complaint ($58,761.50), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order Appointing Substitute Custodian and Authorizing Movement of Defendant Vessel. However, as Plaintiff's maritime necessaries lien interest in the Defendant Vessel does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

**IT IS FURTHER ORDERED** that should Plaintiff elect to credit bid, it shall file and serve any appearing parties with its Notice of Intent to Credit Bid no later than seven (7) days prior to the date of the sale of the Defendant Vessel, as required by Civil Local Rule E.1(e)(2); and

**IT IS FURTHER ORDERED**, pursuant to Civil Local Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase; and

**IT IS FURTHER ORDERED**, that if no objection to the sale of the Defendant Vessel is filed within three days of the auction date, exclusive of Saturdays, Sundays and

legal holidays, the U.S. Marshal shall forthwith issue to the high and successful bidder a Bill of Sale for the Defendant Vessel.

**IT IS SO ORDERED**.

Dated: January 7, 2025

_____
Honorable James E. Simmons Jr.
United States District Judge